Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716
John Thomas Cooper, Jr.
Executive Organizer
Secretarial Working Group
E-Mail: southwestrecords@gmail.com
Phone: (520) 272-9070

FILED ___ LODGED
___ RECEIVED ___ COPY

MAR - 9 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716
Jon McLane
Chief Executive Organizer
Field Outreach Working Group
E-Mail: jonathanmclane@yahoo.com
Phone: (520) 329-9192

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JON MCLANE, et. al.,<br><br>Plaintiffs,<br>vs.<br><br>CITY OF TUCSON, et. al.,<br><br>Defendants. | Case No.: 4:15-CV-13-JAS |
| JOHN THOMAS COOPER, JR., AND JONATHAN MCLANE  Plaintiffs,<br>vs.<br><br>CITY OF TUCSON, et. al.,<br><br>Defendants. | Case No.: CV 12-208 TUC DCB (Lead Case)<br><br>Case No.: CV 12-781 TUC DCB (Consolidated)<br><br>**MOTION TO CONSOLIDATE RELATED CASES** |

Pursuant to Federal Rule of Civil Procedure 42(a), Plaintiffs hereby move to consolidate *Jon McLane, et. al. vs. City of Tucson, et. al.*, Civil Case No. 4:15-CV-13-JAS  with *Cooper, et al. v. City of Tucson, et al.*, Civil Case No. 4:12-CV-208-TUC-DCB; a related action originally filed by Plaintiffs in the Pima County Superior Court against the City of Tucson and numerous City officials. Because

Occupy Public Land
3054 N. Edith Blvd.
Tucson, Ariz. 85716

these two cases involve substantially similar parties and similar facts and legal arguments, judicial efficiency would be served by consolidating the two cases for all purposes. This Motion is supported by the following Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

On January 14th, 2015, Plaintiffs filed this Complaint and a Motion to Proceed *In Forma Pauperis*. This Court, the Honorable James A. Soto, issued an Order on March 4th, stating in part:

> [A] review of the record reflects that the parties and subject matter substantially overlap with the ongoing litigation in *Cooper, et al.. v. City of Tucson, et al.*, CV 12-208 TUC DCB. Among other things, the plaintiffs and defendants are substantially the same people and entities, and the subject matter overlaps significantly.

Doc. #4 at p. 1.

Accordingly, the Court ordered Plaintiffs to "either show cause as to why this case should not be consolidated with *Cooper* or file simultaneous Motions to Consolidate in this Court and Judge Bury's Court in the pending litigation." Id. Plaintiffs now come to comply with this Order.

## I.) Facts and Procedural History

Plaintiffs are members of Occupy Public Land ("OPL"), a 501(c)(3) non-profit organization whose over-arching goal is to educate concerning corporate power over governments, and to create solutions to the problems preventing humans from creating a stable and sustainable society. OPL is aligned with the general Occupy movement born c. 2011. OPL has a political message:

-2-

Occupy Public Land was organized specifically to create a system to replace the plutocratic system of pseudo-democracy now controlling the United States of America. The organization has three major goals: (a) bring the consensus-based decision making process to the neighborhood and community organizations which make over-arching decisions concerning the governance of residential areas; (b) create a system to remove financial considerations from controlling the exercise of civil and political rights; (c) create a system in which economic power is evenly distributed amongst the people; which shall include for the protection of the commons—public spaces, lands, and waters—for the continued use and enjoyment of the human race and animal species.

https://www.facebook.com/OccupyPublicLand/info?tab=page_info (page last visited 3/8/15).

OPL has used the social justice issue of homelessness to voice its message in Tucson:

OCCUPY HOMELESSNESS:

This program is designed to educate and empower the local homeless people—and the community as a whole—on methods and strategies to eliminate homelessness, and to prevent the continued violation of homeless individuals' human rights in Arizona and across the United States. One main facet of the program is the fact that by working together, both homeless and those with homes can work toward building a sustainable housing system which is truly equitable and just to all. This team work encourages the social integration we believe is necessary to heal human society worldwide. The OCCUPY HOMELESSNESS classes and projects are as follows:

- OCCUPY HOMELESSNESS Teach-in

- Resource booth

- Homeless service hosted events

- Daily food and clothes donation drive

- Daily food distribution

Occupy Public Land
3054 N. Edith Blvd.
Tucson, Ariz. 85716

- Weekly blood drive
- Safe Park Outdoor Shelter / community transition program
- Civil and political rights education

https://www.facebook.com/OccupyPublicLand/info?tab=page_info (page last visited 3/8/15).

Advocating for the homeless has brought OPL into conflict with the City of Tucson; and it was this conflict which resulted in the litigation. The case CV 12-208 involving Plaintiffs Cooper and McLane has been consolidated with another brought solely by Plaintiff McLane, CV 12-781. CV 12-208 originally brought only Park Claims (and so names Park Claims defendants: the City of Tucson, Fred Gray, Jr., and Kelly Gottschalk) but was amended in Doc. #14, the First Amended Complaint, to add the Sidewalk Claim related to the arrest of Plaintiff McLane and nine others on June 21, 2012, but no additional defendants. CV 12-781 brought the Sidewalk claims relating to the arrest or harassment of Plaintiff McLane on March 1, 2012, March 10, 2012, March 28, 2012, and April 5, 2012, against Defendants Villaseñor, Miranda, Rothschild, Officers John Doe 1-20, and the City of Tucson. Doc. #28-1.

The Third Amended Complaint added a Sidewalk Claim alleging Plaintiff Cooper also was arrested on June 21, 2012. The Third Amended Complaint also added Sidewalk Claims regarding incidents of arrest or harassment of Plaintiff Cooper on April 26, 2012, and June 22, 2012; members of OPL on September 17, 2012; and Plaintiff McLane on October 1, 2013; October 2, 2013; and February 1, 2014. The Third Amended Complaint brings its claims against multiple new defendants (or defendants new to the complaint in Case CV 12-208): Greg Jackson, Peggy Webber, Albert Elias, Sally Stang, Susanna Rodriguez, Richard Miranda, Roberto Villaseñor, Jim Webb, Timpf, Mcnitt, Lopez, Nancy Mckay-

-4-

Occupy Public Land
3054 N. Edith Blvd.
Tucson, Ariz. 85716

Hill, Rohr, Payne, Keating, Gannon, Tingley, Knepper, Kneupp, Lehrer, Kidd, Kugler, Zaugra, Hawkings, Krammes, Halvorson, Maracigan, Dancer, Forchione, and Officers John Doe 1-30.

15-CV-13-JAS brings sidewalk claims concerning the harassment of Plaintiff McLane and confiscation of his protest signs by park officials on July 1st, 2014; the failure of City officials to take action against these officials based on a complaint filed by Plaintiff Cooper on July 3, 2014; and Plaintiff Cooper arrest on August 29th, 2014. This Complaint also brings broad claims of systemic constitutional violations such as: Lack of Policy, Training, and Procedures Designed to Prevent Constitutional Violations; Systemic Due Process Violations in the Tucson City Courts; and Laws and Ordinances Enacted Specifically to Discriminate Against the Homeless. This Complaint brings its claims against multiple new defendants: Martha Durkin; Christopher Hale; Aaron Hassinger; Marcos Castro; Mike Hayes; John Sedwick; Connie Lauth; Donna Difiore; Scott Cummings; Daniel Matlick; Lizzie Mead; Shannon Riggs; Tom Clark; Delma Allen (#40736); Tucson Police Officer Dellinger (#31909); Jim Rizzi; Gerald Teague; and Claudette Gross.

## II.) Argument

Rule 42 (a) of the Federal Rules of Civil Procedure provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a).

-5-

Occupy Public Land
3054 N. Edith Blvd.
Tucson, Ariz. 85716

The purpose of Rule 42(a) "is to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties." Wright & A. Miller, *Federal Practice and Procedure*, § 2381 (1971); L.R.Civ. 42.1(a). To determine whether to consolidate, a court considers whether "savings of expense and gains of efficiency can be accomplished without sacrifice of justice." *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009) (internal quotation omitted). Consolidation is "particularly appropriate" where, as here, two actions involve some or all of the same parties and "are likely to involve the same witnesses and arise from the same series of events or facts." *Id.* at 21. Here, consolidation is appropriate because both actions involve similar facts and legal issues and substantially similar parties. See *Blasko v. Washington Metro. Area Transit Auth.*, 243 F.R.D. 13, 16 (D.D.C. 2007).

The instant actions involve "a common question of law or fact" and, as such, satisfy the only requirement for consolidation under Rule 42(a). Although it is sufficient for purposes of Rule 42(a) if the actions involve only one common question of law or fact, the actions before the court here involve a multitude of common questions of both law and fact. Those common questions are not peripheral issues; they go to the very heart of the two actions.

Although there is currently one glaring difference between *Cooper* and the current case—namely, that some discovery has already been conducted in *Cooper* and an attorney was appointed by the Court to represent Plaintiffs in that action—consolidation of the two cases "for all purposes" under Rule 42(a) does not require a finding that both actions are on identical footing procedurally because the two actions will each retain their separate procedural postures. See, e.g., *Cablevision Sys. Dev. Co v. Motion Picture Ass'n of Am., Inc.*, 808 F.2d 133, 135 (D.C. Cir. 1987) ("[C]onsolidation is permitted as a matter of convenience and

-6-

economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.") (quoting *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496-97 (1933)); *United States v. City of Chicago*, 385 F. Supp. 540, 543 (N.D. Ill. 1974) (fact that cases are at different stages of the discovery process not a bar to consolidation).

A court has broad discretion in determining whether consolidation is practical. *Atlantic States Legal Foundation Inc. v. Koch Refining Co.*, 681 F. Supp 609, 615 (D. Minn. 1988). In exercising this discretion, a court should weigh the time and effort consolidation would save with any inconvenience or delay it would cause. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985); *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). See also *Kramer v. Boeing Co.*, 134 F.R.D. 256 (D. Minn. 1991). Consolidation will achieve substantial efficiencies and savings without sacrificing fairness. Because the Court in *Cooper* has issued an Order resetting the time for discovery, both cases are basically at the exact same point in the pretrial process. As a result, consolidation will not cause the trial of one action to be delayed while discovery is completed in the other action, as is sometimes the case.

Consolidation offers efficiency and convenience in this case. Consolidation will result in one trial which will bind all plaintiffs and defendants. This will save time and avoid unnecessary costs to the defendants, the plaintiffs in two actions, witnesses who would otherwise be required to testify in both cases, and this Court. Consolidation of these two cases for discovery and trial is therefore in the interests of justice because it will eliminate unnecessary duplication of effort by the Court and all parties with regard to the adjudication of the claims in both actions. See, e.g., *Chang v. U.S.*, 217 F.R.D. 262, 265 (D.D.C. 2002) ("Consolidation may increase judicial efficiency by reducing presentation of duplicative proof at trial,

-7-

eliminating the need for more than one judge to familiarize themselves with the issues presented, and reducing excess costs to all parties and the government.").

### III.) Conclusion

For the foregoing reasons, and based on the foregoing authorities, the Court should issue its Order consolidating the two cases for all purposes.

**RESPECTFULLY SUBMITTED** this 9th day of March, 2015.

John Cooper, Jr.
*Pro Se* Plaintiff

Jonathan McLane
*Pro Se* Plaintiff

Copies of the forgoing delivered
This date to:

Carl Sammartino
Sammartino Law Group, P.L.L.C.
5240 E. Pima Street, #113
Tucson, AZ 85712
Attorney for Plaintiffs in *Cooper v. City of Tucson*

Christopher E. Avery
Principal Assistant City Attorney for Michael G. Rankin
Tucson City Attorney

-8-

# ATTACHMENTS

**First Amended Complaint in *Jon McLane, et. al. vs. City of Tucson, et. al* 15-CV-13-JAS**

**Order Dated March 4th in *Jon McLane, et. al. vs. City of Tucson, et. al* 15-CV-13-JAS**

Occupy Public Land
3054 N. Edith Blvd.
Tucson, Ariz. 85716

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9    Jon McLane, et al.,

10                        Plaintiffs,          No.   4:15-CV-13-JAS

11    v.

12    City of Tucson, et al.,                  **ORDER**

13                        Defendants.

14

15

16        Pending before the Court is Plaintiffs' Motion for Leave to Proceed In Forma

17   Pauperis (Doc. 2). However, a review of the record reflects that the parties and subject

18   matter substantially overlap with the ongoing litigation in *Cooper, et al. v City of Tucson,*

19   *et al.,* 12-CV-00208-DCB.   Among other things, the plaintiffs and defendants are

20   substantially the same people and entities, and the subject matter overlaps significantly.

21        Therefore, Plaintiffs are ordered either to show cause as to why this case should

22   not be consolidated with *Cooper* or file simultaneous Motions to Consolidate in this

23   Court and with Judge Bury's Court in the pending litigation.  If Plaintiffs do not show

24   cause or file those Motions **ON OR BEFORE APRIL 1, 2015**, this action may be

25   dismissed.

26

27        Dated this 4th day of March, 2015.

28

1

2

3       _____
        Honorable James A. Soto
4       United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716
John Thomas Cooper, Jr.
Executive Organizer
Secretarial Working Group
E-Mail: southwestrecords@gmail.com
Phone: (520) 272-9070

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716
Jon McLane
Chief Executive Organizer
Field Outreach Working Group
E-Mail: jonathanmclane@yahoo.com
Phone: (520) 329-9192

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

JON MCLANE;
JOHN THOMAS COOPER, JR,

        Plaintiffs,

    vs.

CITY OF TUCSON; MARTHA DURKIN; KELLY
GOTTSCHALK; CHRISTOPHER HALE; AARON
HASSINGER; MARCOS CASTRO; FRED GRAY; MIKE
HAYES; PEG WEBER; JOHN SEDWICK; CONNIE LAUTH;
DONNA DIFIORE; SCOTT CUMMINGS; DANIEL
MATLICK; LIZZIE MEAD; SHANNON RIGGS; TOM
CLARK; DELMA ALLEN (#40736); TUCSON POLICE
OFFICER DELLINGER (#31909); ROBERTO VILLASEÑOR;
MARK TIMPF; JIM WEBB; JIM RIZZI; GERALD TEAGUE;
CLAUDETTE GROSS; LEE MCNITT,

        Defendants.

Case No.:
4:15-CV-13-JAS

**CIVIL RIGHTS ACTION**

**First Amended Complaint**

**(Jury Trial Demanded)**

# VERIFIED COMPLAINT

    Plaintiffs—*in propria persona*—state for their Verified Complaint the following under penalty of perjury:

# **INTRODUCTION**

I). This is an action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief and monetary damages to redress the unconstitutional denial of Plaintiffs' rights to free speech, expression, and assembly guaranteed by the First and Fourteenth Amendments to the United States Constitution; and Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution to due process, equal protection, the right to travel and to be free of unreasonable searches and seizures.

II). The City of Tucson engages in a pattern or practice of taking action against homeless citizens for First Amendment activity in violation of the First, Fourth and Fourteenth Amendments. This pattern is manifest in a range of ways, including:

- The unnecessary and excessive application of statutes or ordinances to prevent or obstruct activity that is protected by the First and Fourteenth Amendments;

- The unnecessary, excessive or retaliatory use of police powers, such as detention, "running" an individual's name through ACIC/FCIC, handcuffing, or otherwise interfering with an individual's right to travel after that individual exercised First and Fourteenth Amendment rights in the presence of City officials;

- Excessive force or threats of the use of such force against persons who are exercising First and Fourteenth Amendment rights;

- The employment of poor tactics and policies that place officials in situations where constitutional violations become inevitable and place officials and civilians at unnecessary risk.

III). In continuing these actions, Defendants are violating Plaintiffs' First, Fourth, and Fourteenth Amendment rights and chilling their present and future

-2-

exercise of these rights. Judicial intervention is required to end Defendants' ongoing interference with Plaintiffs' freedom of speech, right to travel, and retaliation against Plaintiffs for exercising their First Amendment rights; and to prevent the ongoing irreparable harms to Plaintiffs resulting from these Constitutional violations.

## JURISDICTION

1). This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (in that they arise under the Constitution of the United States), § 1343(a)(3) (in that they are brought to redress deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution), § 1343 (in that they seek to secure equitable relief under 42 U.S.C. § 1983), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

2). Venue is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims herein occurred in Pima County, in the State and District of Arizona.

3). This Court has the authority to grant damages, declaratory and injunctive relief, and any other appropriate relief pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## PARTIES

4). Plaintiff John Thomas Cooper, Jr., is a natural citizen of the United States and of the State of Arizona, currently residing in the City of Tucson, in the County of Pima. Plaintiff Cooper is currently homeless, with a physical address of

-3-

99 South Church Ave., Tucson, Ariz. 85701. Plaintiff's mailing address is 3054 N. Edith Bvld., Tucson, Ariz. 85716. Plaintiff was a resident of Arizona during all relevant times to this action.

5). Plaintiff Jon McLane, is a natural citizen of the United States and of the State of Arizona, currently residing in the City of Tucson, in the County of Pima. Plaintiff McLane is currently homeless, with a physical address of 99 South Church Ave., Tucson, Ariz. 85701. Plaintiff's mailing address is 3054 N. Edith Bvld., Tucson, Ariz. 85716. Plaintiff was a resident of Arizona during all relevant times to this action.

5). Defendant Fred Gray, Jr., who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was the Director of the Tucson Parks and Recreation Department all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of park policies, procedures, and practices in the City of Tucson.

7). Defendant Mike Hayes, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was the Deputy Director of the Tucson Parks and Recreation Department all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of park policies, procedures, and practices in the City of Tucson.

8). Defendant Peggy Weber, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Administrator of the Tucson Parks and Recreation Department all times relevant

-4-

to this Complaint. She is and has been responsible for the promulgation and implementation of park policies, procedures, and practices in the City of Tucson.

9). Defendant Martha Durkin, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and the City Manager of the City of Tucson, at all times relevant to this Complaint. She is responsible for the overall management of the Tucson City Government. She is also responsible for the oversight and policy management of the Tucson City Court.

10). Defendant Kelly Gottschalk, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and is the duly-appointed Finance Director and Assistant City Manager of the City of Tucson, at all times relevant to this Complaint. She is responsible for the overall management of the Finance and Support Services Department of the Office of the Tucson City Manager. She is also responsible for the oversight and policy management of the Tucson Police and Parks Departments.

11). Defendant Christopher Hale, who is a natural person was a resident of the City of Tucson, Pima County, Arizona, United States of America; and is the duly-appointed Court Administrator for the Tucson City Court, at all times relevant to this Complaint. He is also responsible for the oversight and policy management of the Tucson City Court, and is a direct subordinate of Defendant Durkin.

12). Defendant Roberto Villaseñor, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was the Chief of the Tucson Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal

-5-

enforcement policies, procedures, and practices in the City of Tucson. He is also responsible for the oversight and policy management of the Tucson Police Department.

13). Defendant Jim Webb, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was a Captain in the Tucson Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson. He is also responsible for the oversight and policy management of the Operations Division Downtown of the Tucson Police Department. He is commander of the Operations Division Downtown, the staff of which includes a secretary, two lieutenants, six sergeants, approximately fifty officers, one detective, a criminal intelligence officer, three marshals, and four community service officers. Additionally, three motorcycle officers are assigned from the Traffic Section to assist with traffic problems in the division.

14). Defendant Mark Timpf, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Assistant Chief of the Tucson Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson. He is commander of the Administrative Services Bureau, responsible for the administrative decisions concerning application of City Code by all Field Officers, to include the Operations Division Downtown. He is also responsible for the development and implementation of training procedures and police policies to give guidance to field officers concerning the applicability of the Constitution of the United States to field operations.

-6-

15). Defendant Lee McNitt, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America, and was a Lieutenant in the Tucson Police department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson. He is one of two (2) lieutenants for the Operations Division Downtown, and a direct subordinate of Defendant Webb.

16). Defendant Jim Rizzi, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Captain of the Tucson Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson. He is the Captain of the Training Division, responsible for the development and implementation of training procedures and police policies to give guidance to field officers concerning the applicability of the Constitution of the United States to field operations. He is a direct subordinate of Defendant Timpf.

17). Defendant Gerald Teague, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Lieutenant of the Tucson Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson. He is the Lieutenant of the Training Division, Southern Arizona Law Enforcement Training Center, responsible for the development and implementation of training procedures and police policies to give guidance to field officers concerning the applicability of the Constitution of the United States to field operations. He is a direct subordinate of Defendant Rizzi.

-7-

18). Defendant Claudette Gross, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Lieutenant of the Tucson Police Department at all times relevant to this Complaint. She is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson. She is the Lieutenant of the Training Division, Advanced Training, responsible for the development and implementation of training procedures and police policies to give guidance to field officers concerning the applicability of the Constitution of the United States to field operations. She is a direct subordinate of Defendant Rizzi.

19). Defendant Delma Allen (#40736), who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Lieutenant of the Tucson Police Department at all times relevant to this Complaint. She is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson.

20). Defendant Officer Dellinger (#31909), who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an Lieutenant of the Tucson Police Department at all times relevant to this Complaint. He is and has been responsible for the promulgation and implementation of legal enforcement policies, procedures, and practices in the City of Tucson.

21). Defendant Aaron Hassinger, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an employee of the Tucson Parks and Recreation Department at all times relevant to

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

this Complaint. He is and has been responsible for the implementation of policies, procedures, and practices of the Tucson Parks and Recreation Department.

22). Defendant Marcos Castro, who is a natural person, was a resident of the City of Tucson, Pima County, Arizona, United States of America; and was an employee of the Tucson Parks and Recreation Department at all times relevant to this Complaint. He is and has been responsible for the implementation of policies, procedures, and practices of the Tucson Parks and Recreation Department.

23). Defendants John Sedwick, Connie Lauth, Donna Difiore, Scott Cummings, Daniel Matlick, Lizzie Mead, Shannon Riggs, and Tom Clark, who are natural persons, were residents of the City of Tucson, Pima County, Arizona, United States of America; and were top level employees and board members of the North Fourth Avenue Merchants Association at all times relevant to this Complaint. They are and have been responsible for the implementation of policies, procedures, and practices of the North Fourth Avenue Merchants Association.

24). Defendant City of Tucson, is a Municipal Corporation, organized under the laws of the State of Arizona. It is responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees; and for any injury occasioned thereby.

25). Plaintiffs sue all Defendants in their official and individual capacities.

26). At all times material to this Complaint, Defendants acted toward Plaintiffs under color of the statutes, ordinances, customs, and usage of the State

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

of Arizona; the Tucson Police Department; and the Tucson Parks and Recreation Department, and the City of Tucson.

## **FACTUAL ALLEGATIONS**

### **Unnecessary, Excessive or Retaliatory Actions Against Plaintiffs**

27). On July 1st, 2014, Defendants Hassinger and Castro accosted Plaintiff McLane at Veinte De Agosto Park (VDA) concerning protest signs Plaintiff McLane had made protesting the actions of Tucson City officials—to include Defendants Hassinger and Castro—in confiscating the property of homeless individuals when that individual was not physically present and laying claim to the property at the time of the government sweep.

28). Defendants Hassinger and Castro confiscated Plaintiff McLane's protest signs and threatened Plaintiff McLane with physical violence in their anger over Plaintiff McLane's exercise of First Amendment rights.

29). On August 29th, 2014, Plaintiff Cooper was at Veinte De Agosto Park (VDA) and witnessed Defendants Hassinger and Castro confiscating property that Plaintiff McLane temporarily left on the sidewalk to the east of VDA Park. Plaintiff Cooper was aware of and suspected that Defendants Hassinger and Castro would attempt to confiscate the property as Plaintiffs had previous encounters with these Defendants, who had shown a propensity to accost Plaintiffs' for exercising First Amendment rights on the sidewalk.

30). Plaintiff Cooper confronted the officials and requested their names for complaint purposes. Plaintiff stated that he was going to notify the Government

-10-

about the continued harassment of homeless individuals by Parks and Recreation staff.

31). When Defendant Hassinger failed to provide his name and employee information, Plaintiff Cooper proceeded to protest the governmental action by yelling such slogans as "who do you work for? You are a public servant, we are the public, you work for us!" This continued for approximately five (5) minutes; after which Plaintiff Cooper called the City Manager's Office via cell phone to attempt to complain about the incident.

32). The City Manager's office transferred Plaintiff Cooper's call to the Parks and Recreation's Administrative Offices for procurement of the names of the Park officials.

33). During this time, Defendant Hassinger called the police, and Defendants Delma Allen and Dellinger responded. Defendants Delma Allen and Dellinger arrested Plaintiff Cooper for a violation of A.R.S §13-2921, Harassment; and A.R.S. §13-2904, Disorderly conduct.

34). Defendants Delma Allen and Dellinger and several employees of the City Attorney's Office informed Plaintiff Cooper that the First Amendment does not apply to verbal statements directed at Park and Recreation groundskeepers, and that as Plaintiff Cooper's "behavior was not part of any lawful demonstration, assembly, or protest" (this term was never defined), the City could bar Plaintiff Cooper from exercising his First Amendment rights.

35). After a trial on the merits in the Tucson City Court, Plaintiff Cooper was found not guilty.

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

## Failure to Take Action Against Officials for
## Employing Unnecessary, Excessive or Retaliatory Actions

36). In response to the actions taken against Plaintiff McLane mentioned in ¶¶27-28, Plaintiff Cooper wrote an E-Mail seeking redress of the issue to the heads of Tucson City Government on July 3, 2014, to include Defendants Webb; Gray; Weber; Hayes; Durkin; and Villaseñor, among others.

37). In the E-Mail, Plaintiff Cooper attached a video of the behavior of Defendants' Hassinger and Castro on July 1st, 2014, confiscating Plaintiff McLane's protest signs and threatening Plaintiff McLane with physical violence in their anger over Plaintiff McLane's exercise of First Amendment rights. Plaintiff Cooper stated:

> Attached please find a copy of the video of several members of the Parks and Rec. Dept. harassing Jon McLane. These actions were illegal and a violation of the Federal Constitution. The City officials depicted here failed to respect "the constitutional shield [that protects] criticism of official conduct." *New York Times Co. v. Sullivan*, 376 U.S. 254, 273, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

38). On the video, Defendants Hassinger and Castro are depicted threatening Plaintiff McLane with violence in retaliation for the posting of protest signs because Defendants Hassinger and Castro did not agree with the message expressed thereon.

39). Even after being put on notice of the constitutional violation and the patent potential of Defendants Hassinger and Castro to engage in behavior which violates the Constitution, Defendants Webb; Gray; Weber; Hayes; Durkin; and Villaseñor took no action to prevent Defendants Hassinger and Castro from taking further action against Plaintiffs or others similarly situated.

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

40). The failure of Defendants Webb; Gray; Weber; Hayes; Durkin; and Villaseñor to take action to correct the actions of Defendants Hassinger and Castro is the direct and proximate cause of the incident mentioned in ¶¶ 29-35, as these Defendants were notified over two months in advance that Defendants Hassinger and Castro were harassing homeless people and taking action against Plaintiffs for the exercise of First Amendment rights.

### Lack of Policy, Training, and Procedures Designed to Prevent Constitutional Violations

41). On information and belief, Defendant City of Tucson has no policy or procedure in place to discipline City officials for violations of constitutional rights, and routinely ignores citizen complaints if those complaints are based on constitutional violations.

42). On information and belief, Defendant City of Tucson has no policy of providing training or policy guidance to City officials concerning First Amendment freedoms, and has a pervasive custom of officials maintaining the official stance of "sue us if you think the constitution is an issue."

43). On information and belief, Defendants City of Tucson, Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, and Gross have a policy and practice of training police and other City officials that the First Amendment only protects citizens engaged in what these Defendants have described as "lawful demonstration, assembly, or protest" (this term is not defined), and even then only applies to verbal statements directed at police. These Defendants' vague unwritten policy does not include specific criteria or conditions for persons seeking to engage in First Amendment activities, nor instructions concerning the

-13-

applicability of the First Amendment to the actions of law enforcement or City personnel.

44). On information and belief, Defendants City of Tucson, Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, and Gross are aware of and condone the actions taken to restrict First Amendment activities, including the harassment, intimidation, and retaliatory acts City officials have directed at Plaintiffs, and have taken no action to lift those restrictions or to prevent future harassment, intimidation, and retaliatory acts from being directed at Plaintiffs.

45). By failing to provide proper training and policy guidance concerning the applicability of the First Amendment to governmental action against citizens, and by defining First Amendment protections as applicable only to large groups of citizens engaged in what these Defendants have described as "lawful demonstration, assembly, or protest," Defendants' actions have chilled, deterred, and infringed upon Plaintiffs' right to engage in protected speech, resulting in harm to Plaintiffs.

46). The acts, omissions, policies, customs, and/or practices of all Defendants are causing irreparable harm to Plaintiffs due to interference with and chilling of their First Amendment rights to protest and/or record governmental action from public right-of-ways, for which they have no adequate remedy at law.

47). An actual and immediate controversy has arisen and now exists between Plaintiffs and Defendants regarding Plaintiffs' ability to exercise First Amendment rights to protest, observe, and/or record governmental action from public right-of-ways. Plaintiffs are entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their

-14-

rights and responsibilities under the law, and Defendants will be free to continue their application of a custom which bars individuals from engaging in protected activity unless in a group or unless the activity is directed at police officers.

## Systemic Due Process Violations in the Courts

48). Defendants Hale, Durkin, and the City of Tucson maintain a policy of charging fees for disclosure in criminal cases. The City's website reports:

> Paper copies of police reports and copies of CDs/DVDs will be available for pick-up at the City Prosecutor's Office on the 5th floor of the City Court Building. The charges are as follows:
>
> > 15 pages or less = $5
> > Each additional 1-15 pages = $5.00
> > For example:
> > Disclosure of 1 to 15 pages = $5.00
> > Disclosure of 16 to 30 pages = $10.00
> > Disclosure of 31 to 45 pages = $15.00, etc.
> > CDs / DVDs = $25
> > Labor Charges after 1 hour (per hour) = $15.

http://courts.tucsonaz.gov/prosecutor/obtaining-police-reports-disclosure, website last visited 1/1/2015.

49). Plaintiffs are homeless and have no money with which to pay for the disclosures necessary for them to litigate criminal court actions and defend themselves. Plaintiffs are at a serious disadvantage in any criminal litigation in the Tucson City Court, unable to marshal the facts and prepare a defense without the prepayment of fees.

50). For example, as stated above at ¶¶ 29-35, Plaintiff Cooper was arrested by Defendants Delma Allen and Dellinger on August 29th. During the course of the litigation in the Tucson City Court, the City denied Plaintiff Cooper's request

-15-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

for *Brady* disclosures in the criminal case on the basis of this policy of Defendants Hale and Durkin.

51). On September 2nd, 2014, Plaintiff Cooper filed his Rule 15.2 Disclosure Notice, in which he made two specific requests for disclosure from the City. Plaintiff Cooper stated:

> [Plaintiff Cooper], pursuant to Rule 15.1 (e) of the Arizona Rules of Criminal Procedure, hereby specifically requests that the State disclose all prior felony convictions of all State's witnesses along with a list of any prior felony convictions that the State intends to use to impeach any defense witnesses.

> [Plaintiff Cooper], pursuant to Rule 15.1 (f) of the Arizona Rules of Criminal Procedure, hereby specifically requests that the State make available to [Plaintiff Cooper] for examination, testing and reproduction, all items disclosed by the State pursuant to Rule 15.1(a)(5) along with recordings of all 911 calls and radio transmissions between any law enforcement officers relevant to the case, and all written reports statements and examination notes made by any state's experts disclosed pursuant to Rule 15.1(b)(4).

Rule 15.2 Disclosure Notice, p. 6.

52). In addition, Plaintiff Cooper sent a letter to the City Attorney on September 2nd, requesting a host of discoverable information. In the letter, Plaintiff Cooper requested as follows:

> I am hereby requesting interviews with all State's witnesses and disclosure including names, addresses, telephone numbers and any statements of all the State's witnesses, experts and investigators.

> Please provide me with copies of all audio and/or video tapes that were made of myself, this incident, or any accounts/recreations thereof. In addition, at the time of this incident, I made several phone

-16-

calls to the City Manager's Office and the Parks and Recreation Administration in an attempt to submit a complaint concerning the conduct of government officials—specifically Parks and Recreation officials. I am hereby requesting that you provide me with a copy of any and all documentation produced by the government in connection with my calls. In addition, I am requesting any and all documentation submitted to the Court on August 29th, 2014, which was considered by the judge in this matter to include the complaint and any supporting documentation, to include request made by the arresting officers.

I am requesting a criminal and disciplinary history of all witnesses, whether admissible or not. Additionally, I am requesting discovery of any and all offers, promises inducements, and representations including but not limited to promises of no prosecution, immunity, lesser sentence, etc. made to witnesses in exchange for their testimony. Please provide me with any 609 or 404(b) evidence you may seek to introduce at trial. Regarding any 404(b) evidence, please include what noncharacter purpose the evidence is offered for as well as its relevance.

Pursuant to these Constitutional and ethical duties, I specifically request that, in addition to examining your own knowledge and files for evidence favorable to my case, you also make specific and detailed inquiry of all investigating agencies and officers involved in this matter in any way to determine if they are aware of any exculpatory or impeachment information involving any witness which may be helpful to my case.

Pursuant to my request, I have enclosed a checklist containing questions regarding some of the information I am seeking. I request that you ask each investigating officer to review the checklist and sign the affirmation at the bottom that he or she is not aware of any such information. Further, I request you return the completed checklist to my office as soon as possible as a supplemental Rule 15 disclosure. Additionally, please consider this a formal request to run an ACJIS background check on all witnesses the State intends to call in this matter and disclose all resulting impeachment and exculpatory information.

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

All the information on the checklist is believed to come within the prosecutor's duty to investigate and disclose pursuant to *Brady* as interpreted by *Kyles* as well as the prosecutor's duty pursuant to the Rules of the Supreme Court, Rule 42, ER 3.8(d).

Plaintiff Cooper's Letter to City Attorney Dated 9/2/2014, at pp. 1-3

53). This denial of *Brady* disclosures put Plaintiff Cooper at disadvantage in the criminal litigation as it made it impossible to impeach the testimony of Defendants Delma Allen, Dellinger, Hassinger and Castro with prior bad acts, felony convictions, or City disciplinary action taken against these Defendants.

54). This denial of *Brady* disclosures created undue interference with Plaintiff Cooper's ability to pursue legal redress for claims that had a reasonable basis in law or fact, and hindered Plaintiff Cooper's efforts to pursue his legal claims.

55). Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, and Hale also maintain a policy of zoning homeless individuals from any area of the City where that individual has been arrested, without a hearing and in the absence of any individualized judicial consideration.

56). For example, as stated above at ¶¶ 29-35, Plaintiff Cooper was arrested by Defendants Delma Allen and Dellinger on August 29th. At the initial appearance also held on August 29th, Defendant Delma Allen requested, and the Tucson City Court granted, an order barring Plaintiff Cooper from returning within 1000 feet of the VDA Park.

-18-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

57). Plaintiff Cooper had not been convicted of any crime, and there was no evidence to suggest that ordering him not to return to the park would have any deterrent effect on future criminal activity. Yet the Tucson City Court, without a hearing and in the absence of any individualized judicial consideration, issued an order requiring unjustified burdens on Plaintiff Cooper—*a pretrial releasee*—without evidence that he posed any risks. Indeed, Judge Klotz stated to Plaintiff Cooper from the bench that the "City has a custom of ordering arrested individuals not to return" to the area of arrest without any showing of future risk.

58). The Court's order had no basis in objective evidence and lacked any analysis to support the order barring the return to the area, and wholly failed to provide a determination that absent an order barring return that more criminal activity would occur.

59). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger and Hale are aware of and condone the mandatory imposition of pretrial release conditions to restrict the homeless' right to travel, including the order barring Plaintiff Cooper from returning to the area of VDA Park, and have taken no action to prevent future issuance of mandatory homeless zoning orders.

60). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger and Hale are aware of and actively promote the mandatory imposition of pretrial release conditions zoning homeless individuals from areas where individuals have been arrested, as a method of clearing unwanted individuals from areas of the city.

-19-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

61). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger and Hale have no rational governmental basis to justify the blanket policy of mandatory imposition of pretrial release conditions zoning homeless pretrial releasees from the areas where they were previously arrested, nor a basis to distinguish between persons charged with a crime and those who are not.

## Laws and Ordinances Enacted Specifically to Discriminate Against the Homeless

62). On March 4, 1996, the Tucson City Council, in a 4-3 vote, passed Resolution Number SS/MARCH4-96-102, entitled "A-Mountain Homeless Campground and Other Homeless Encampments (City-Wide)." The Resolution provided:

1. That the Community Services Department, in coordination with other appropriate City departments, work with persons currently camping on City property to inform them of all sources available to assist them in finding employment and housing.

2. That appropriate City officials provide a minimum of 72 hours' notice to persons illegally camping on City property that they will need to vacate that property or else face enforcement action.

3. That after the City has provided notice, and if individuals do not vacate City property on which they are illegally camping, that the Tucson Police Department take appropriate enforcement action for violation of the State trespassing statutes.

63). Since 1996, Defendant City of Tucson has embarked upon an all-out assault on the homeless individual. Defendant City has enacted a laundry list of anti-homeless laws and customs barring behavior such as: Closure of public

-20-

places the homeless frequently visit; construction of statutes prohibiting obstruction of sidewalks/public places to bar the carry or temporary storage of personal property, or the laying of one's body in a public place; strict enforcement of loitering/loafing in public places; denying individuals the right to sit or lay down on sidewalks or in other public places; denying individuals the right to sleep in public places; strict enforcement of City park curfews against individuals who patently appear homeless; prohibiting panhandling or begging in public areas where such activity is most lucrative; and making basic human functions such as bathing, urinating and defecating in public a criminal offense while utterly failing to provide a public means for individuals without homes to comply with the law.

64). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber and Hayes are aware of and condone the imposition of anti-homeless laws and customs to restrict the homeless' right to travel into the jurisdiction, and have taken no action to prevent the violation of Plaintiffs right to travel.

65). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber and Hayes condone and support these ordinances to erect direct barriers to travel, to impede travel, and to penalize migration of indigent individuals into the jurisdiction.

66). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber and Hayes condone and support ordinances that proscribe public

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

sleeping and are aimed solely at homeless "transients", and not at the act of public sleeping.

67). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber and Hayes maintain this custom of prohibiting sleeping not because of any evil associated with the conduct itself, but rather to elevate concerns regarding the homeless by business owners and wealthy citizens—called "stake holders" by Defendants.

68). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber and Hayes are aware of the overwhelmingly disproportionate effect such laws have on Plaintiffs and others similarly situated. Because few people who have access to safe, sanitary shelter regularly sleep in outdoor public areas, the vast majority of those arrested are homeless. These Defendants know this, and have failed to take action to mitigate the disproportionate effect of these laws on Plaintiffs.

69). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber and Hayes are aware of and condone the application of laws making basic human functions such as bathing, urinating and defecating in public a criminal offense, and utterly fail to provide a public means for individuals without homes to comply with the law; for the sole purpose of encouraging indigent individuals currently living in the jurisdiction to leave the City of Tucson.

-22-

70). As a result of Defendants' custom, Plaintiffs' and the other 8,000 homeless who live in the City of Tucson face a daily "Hobson's choice": they must exclude themselves from the jurisdiction or face arrest and prosecution for violating its antihomeless ordinance. Plaintiffs' are forced to live as criminals, violating Defendant's antihomeless ordinance whenever they succumb to the need to sleep, bath, urinate or defecate. This barrier effectively prevents Plaintiffs' from entering or remaining in the jurisdiction for longer than they can remain awake, clean, and without need of restroom services.

71). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber, Hayes, John Sedwick, Connie Lauth, Donna Difiore, Scott Cummings, Daniel Matlick, Lizzie Mead, Shannon Riggs, and Tom Clark have conspired to create a policy of barring individuals who patently appear homeless from performing any of the following acts on the sidewalks of the Fourth Avenue Underpass: carrying or temporarily storing personal property; denying individuals the right to sit or lay down on sidewalks even when giving 5 feet of space for passersby; denying individuals the right to sleep on sidewalks even when giving 5 feet of space for passersby; prohibiting panhandling or begging on the sidewalks of the Fourth Avenue Underpass.

72). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber, Hayes, John Sedwick, Connie Lauth, Donna Difiore, Scott Cummings, Daniel Matlick, Lizzie Mead, Shannon Riggs, and Tom Clark have conspired to create a policy of barring individuals who patently appear homeless from performing the acts mentioned in ¶71 on the sidewalks of the Fourth Avenue

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

Underpass to elevate concerns regarding the homeless by business owners and wealthy citizens—called "stake holders" by Defendants.

73). On information and belief, Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Gray, Weber, Hayes, John Sedwick, Connie Lauth, Donna Difiore, Scott Cummings, Daniel Matlick, Lizzie Mead, Shannon Riggs, and Tom Clark have conspired to create a policy of barring individuals who patently appear homeless from performing the acts mentioned in ¶71 on the sidewalks of the Fourth Avenue Underpass for the sole purpose of encouraging indigent individuals currently living in the jurisdiction to leave the City of Tucson.

74). The acts, omissions, policies, customs, and/or practices of all Defendants are causing irreparable harm to Plaintiffs due to interference with and chilling of their Fourteenth Amendment fundamental right to travel and their First Amendment right to panhandle or beg on the sidewalks of the Fourth Avenue Underpass, for which they have no adequate remedy at law.

75). An actual and immediate controversy has arisen and now exists between Plaintiffs and Defendants regarding Plaintiffs' ability to exercise their Fourteenth Amendment fundamental right to travel and their First Amendment right to panhandle or beg while sitting or standing on the Fourth Avenue Underpass public right-of-ways. Plaintiffs are entitled to a declaration of rights with respect to this controversy. Without such a declaration, Plaintiffs will be uncertain of their rights and responsibilities under the law, and Defendants will be free to continue their application of a custom which bars individuals who patently appear homeless from performing any of the following acts on the sidewalks of the Fourth Avenue Underpass: carrying or temporarily storing personal property;

-24-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

denying individuals the right to sit or lay down on sidewalks even when giving 5 feet of space for passersby; denying individuals the right to sleep on sidewalks even when giving 5 feet of space for passersby; prohibiting panhandling or begging on the sidewalks of the Fourth Avenue Underpass.

## FIRST CAUSE OF ACTION

*Violation of the Fourteenth Amendment*
*Due Process Clause*
**42 U.S.C. §1983**

**(Against Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger, Hale)**

76). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

77). Defendants' actions described above in ¶¶ 48-61 violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by denying Plaintiffs the due process of law and meaningful access to the courts.

78). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

79). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

-25-

## SECOND CAUSE OF ACTION

### *Violation of the Fourteenth Amendment*
### *Equal Protection Clause*
### 42 U.S.C. §1983

**(Against Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger, Hale, Gray, Weber and Hayes)**

80). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

81). Defendants' actions described above in ¶¶ 48-61 and ¶¶ 55-75 violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by denying Plaintiffs the equal protection of the laws in violating the fundamental right to travel. Moreover, this discrimination clearly violates equal protection as Plaintiffs have been arbitrarily and irrationally treated differently from others similarly situated solely on the basis of their indigency, and no rational basis for the different treatment exists.

82). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

83). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

-26-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

# THIRD CAUSE OF ACTION

## *Violation of the Fourth Amendment*
## 42 U.S.C. §1983

**(Against Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger)**

84). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

85). Defendants' actions described above in ¶¶ 27-40 violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution by arresting Plaintiff Cooper without probable cause and failing to take action to protect Plaintiff's constitutional rights when advised of serious risk of violation.

86). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

87). The violation of Plaintiffs' Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by Defendant City of Tucson.

88). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

-27-

# FOURTH CAUSE OF ACTION

*Violation of the First Amendment*
**42 U.S.C. §§1983, 1985(3)**
**(Against All Defendants)**

89). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

90). Defendants' actions described above in ¶¶ 27-47 and ¶¶ 63-75 violated Plaintiffs' rights under the First Amendment to the United States Constitution by infringement on and chilling of protected First Amendment activity and failing to take action to protect Plaintiffs' constitutional rights when advised of serious risk of violation.

91). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

92). Defendants' have conspired to violate the First Amendment to the United States Constitution for the purpose of depriving homeless individuals in the City of Tucson of the equal protection of the laws, or of equal treatment, privileges and immunities under the laws; and this discrimination is motivated by invidiously discriminatory animus to treat homeless individuals differently solely on the basis of their indigency, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1985(3).

93). The violation of Plaintiffs' First Amendment rights occurred pursuant to a policy, custom, or practice, maintained by Defendant City of Tucson.

-28-

94). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

## **FIFTH CAUSE OF ACTION**

### *Violation of the Fourteenth Amendment*
### *Equal Protection Clause*
### *42 U.S.C. §§1983, 1985(3)*

**(Against Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger, Hale, Gray, Weber, Hayes, Sedwick, Lauth, Difiore, Cummings, Matlick, Mead, Riggs, and Clark)**

95). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

96). Defendants' actions described above in ¶¶ 63-75  violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by denying Plaintiffs the equal protection of the laws in violating the fundamental right to travel. Moreover, this discrimination clearly violates equal protection as Plaintiffs have been arbitrarily and irrationally treated differently from others similarly situated solely on the basis of their indigency, and no rational basis for the different treatment exists.

97). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

98). Defendants' have conspired for the purpose of depriving homeless individuals in the City of Tucson of the equal protection of the laws, or of equal treatment, privileges and immunities under the laws; and this discrimination is

-29-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

motivated by invidiously discriminatory animus to treat homeless individuals differently solely on the basis of their indigency, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1985(3).

99). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

## SIXTH CAUSE OF ACTION

### *Violation of the Fourteenth Amendment*
### *Due Process Clause*
### 42 U.S.C. §§1983, 1985(3)

**(Against Defendants City of Tucson, Roberto Villaseñor, Durkin, Gottschalk, Webb, Timpf, McNitt, Rizzi, Teague, Gross, Delma Allen, Dellinger, Hale, Gray, Weber, Hayes, Sedwick, Lauth, Difiore, Cummings, Matlick, Mead, Riggs, and Clark)**

100). Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

101). Defendants' actions described above in ¶¶ 63-75 violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution by denying Plaintiffs the due process of law by enforcing law and ordinances making basic human functions such as bathing, urinating and defecating in public a criminal offense, while utterly failing to provide a public means for individuals without homes to comply with the law; for the sole purpose of encouraging indigent individuals currently living in the jurisdiction to leave the City of Tucson.

102). Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials

-30-

should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

103). Defendants' have conspired for the purpose of depriving homeless individuals in the City of Tucson of the equal protection of the laws, or of equal treatment, privileges and immunities under the laws; and this discrimination is motivated by invidiously discriminatory animus to treat homeless individuals differently solely on the basis of their indigency, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1985(3).

104). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiffs have suffered emotional and economic harm.

## **PRAYER FOR RELIEF**

105). Plaintiffs therefore respectfully request that the Court enter a judgment including:

      (a). A declaratory judgment that Defendants' actions as described herein violated the First, Fourth and Fourteenth Amendments to the United States Constitution;

      (b). To the extent the Court finds that Defendants' conduct were authorized by a policy or regulation, a declaratory judgment that those policies or regulations are unconstitutional under the First, Fourth and Fourteenth Amendments to the United States Constitution;

      (c). A Permanent Injunction enjoining:

-31-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

(i) The City of Tucson from application of laws making basic human functions such as sleeping, bathing, urinating and defecating in public a criminal offense to individuals who patently appear homeless without providing a public means for individuals without homes to comply with the law;

(ii) The City of Tucson from utilizing a blanket policy of mandatory imposition of pretrial release conditions zoning homeless pretrial releasees from the areas where they were previously arrested, or a policy of charging fees for *Brady* disclosures in criminal cases;

(iii) Mandating City officials to provide proper training and policy guidance concerning the applicability of the First Amendment to actions of government officials, and barring the City from defining First Amendment protections as applicable only to large groups of citizens engaged in what Defendants describe as "lawful demonstration, assembly, or protest";

(d). As to all Defendants, compensatory and punitive damages for violation of the laws and Constitution of the United States in an amount to be determined at trial by jury;

-32-

(e). Reasonable fees and costs of suit; and

(f). Any other relief as may be just and proper.

There can only be justice for one, when it is there for all.

**RESPECTFULLY SUBMITTED** this 9th day of March, 2015.

John Cooper, Jr.
*Pro Se* Plaintiff

Jonathan McLane
*Pro Se* Plaintiff

-33-

Occupy Public Land
3054 N. Edith Bvld.
Tucson, Ariz. 85716

## **VERIFICATION**

We, the undersigned individuals proceeding *in propria persona*, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the factual statements made herein are based upon information personally known to us, are true to the best of our knowledge, and that we believe we are entitled to relief.

**DATED** this 9th day of March, 2015.

_____
John Cooper, Jr.
*Pro Se* Plaintiff

_____
Jonathan McLane
*Pro Se* Plaintiff

-34-